The next case on the call of the doctor is agenda number 7, case number 127824, People of the State of Illinois v. Laura Epstein. Mr. Taylor, you are here, and I believe that our appellee will be joining us via Zoom. Yes, I believe that's correct, Judge. Okay, so we have to make sure she's with us. Okay. Just a little technical delay here. Very good. Ms. Kriegel, are you with us? Oh, oh. Jason. Yes, good morning. Are you with us, correct? I'm here. I'm here. All right. So, Mr. Christopher Taylor, you may begin. Thank you. Good morning, Your Honors. May it please the court, counsel. My name is Christopher Taylor, and in this case, I represent Laura Epstein. We appreciate the opportunity to address the court on these issues of great importance. While I know that the court is aware of the facts of the case, some highlights are probably warranted. On July the 15th of 2017, the defendant, Laura Epstein, was detained and arrested and charged with the offense of driving under the influence of alcohol, among some other charges that were also levied. A single chemical test was conducted approximately a little over four hours after the traffic stop and revealed a BAC of 0.107. A motion was filed in the trial court to suppress that test, alleging in part that it was more prejudicial than it was probative, and a hearing was held. At the hearing, undisputed scientific evidence was presented from Dr. James O'Donnell, qualified by the trial court as an expert in pharmacology and the effects of alcohol on the human body. Dr. O'Donnell testified that the test result of Ms. Epstein was, in his opinion, inherently unreliable to determine BAC as it existed over four hours earlier. O'Donnell's opinion was based in part on his observation of a video that he reviewed, in which symptoms of intoxication that had not been present earlier in the video began to show up about 25 minutes after the driving. That led Dr. O'Donnell to the conclusion that Ms. Epstein was still in the absorption phase at the time of the driving. Dr. O'Donnell testified that retrograde extrapolation, which I'm sure the court is familiar with, that's the process of taking a scientific calculation, taking a blood test result from a later time and extrapolating it back to the time of the driving, that that is valid science. Dr. O'Donnell indicates that that science is oftentimes reliable, but in this particular case it could not allow for a proper calculation to determine BAC over four hours earlier. The trial court... Oh, absolutely. The court's president on that matter is... So how does that impact our analysis here? Well, it doesn't because all of the court's case law that considers that particular issue has dealt with reliable test results. There's never been, that I found, a case wherein the court simply said it's admissible regardless of whether it's reliable or not. The case law, Bull Valley versus Winterspect, I'm probably butchering the name of that case, but in that case the court said that there was not a requirement of providing retrograde extrapolation testimony for tests that were over the threshold level, but they didn't say it without regard to the facts of the case. That case relied on the fact that there were symptoms of intoxication that were in fact diminishing over time that led the court to conclude that the test was reliable because the BAC would have likely been at a greater level earlier because the intoxication effects were in fact diminishing. Here we have a case, a unique, somewhat of a unicorn of a case, where the scientific evidence is that the test is not reliable. It was not challenged by the presentation of any other scientific evidence indicating that the test would be reliable. And when you say not reliable, you're not contesting the validity of the test and the results for, at that time, what her BAC was. So as you're saying it's not reliable because she said she started drinking at a certain time and the expert said based on the video it appears that the alcohol consumption is peaking. That's what you mean when you say it's not reliable, right? Yes, it was reliable at the time that it was taken, but it is not reliable to give any insight into intoxication four hours earlier. And there's been substantial case law on these kinds of issues in cases where the testing was reliable. I have not located any case law that suggests that where an expert has testified unrebuttedly so that this test result is useless to determine BAC at the time of the driving, there is no case out there that says that that should still be admitted and there should still be a presumption raised that the person was intoxicated at the time of the driving. But the expert did have to rely on representations by the defendant in terms of what she consumed, when she consumed it. So doesn't it just go to the weight? I considered that argument when it was made in the briefs. The fact of the matter is, though I respectfully suggest, that the expert did not necessarily rely on that issue to reach his determination. He considered that issue of what she reported drinking with the totality of the circumstances. He then found that testimony to be more, her information to be more believable when he reviewed the other circumstances, that being the video, and revealed that he detected signs of intoxication that were increasing. And he's an expert in this. He's an expert in pharmacology and the effects of alcohol on the human body. He was qualified as such by the trial court. And when he watched the video, he saw that the signs of intoxication were increasing as time went on, not decreasing as they were in the Bull Valley case that was decided by this court so many years ago. And I submit that he, that expert specifically indicated that on the facts of this case, he challenged whether any expert or any person could make use of the test result that occurred later to go back to the earlier time. The, I would not imagine that any expert who has any kind of self-respect and calls himself a scientist would draw any kind of a conclusion simply from speaking to an individual charged with a crime and making a conclusion based on that. And that's not what happened here. It's been significant. Mr. Taylor, you know, most lay people have experience with the effects of alcohol. So why shouldn't a jury be allowed to determine the credibility of the expert testimony when deciding whether the test results were indicative of defendant's BAC level at the time she was driving? It's a good question. But the answer to that question is that the trial court has the role of gatekeeper to determine whether information is reliable enough to be given to a jury to weigh the credibility. I'm sorry. I hit that line. To weigh the credibility of competing versions. And had there been a competing expert presented in this case, had there been an expert that says, yes, there is some way in which this test could be reliable, I suspect that the trial court would have weighed things somewhat differently. But that was not presented here. The court's prior case law indicates that the issues of alcohol absorption and elimination are beyond the knowledge of lay people. That is something that has always been the subject of expert testimony where it's presented. Indeed, Dr. O'Donnell has testified in cases previously regarding alcohol absorption and elimination, and that has always been a matter for expert opinion. If this was a credibility determination to be made by the jury, the only way that that would be the case is if there was some expert that was suggesting some manner in which that test could be useful. And Dr. O'Donnell challenged the state to present such an expert, and they didn't. No expert has explained. I don't believe any lay person has explained at any stage of this litigation how that test can actually be useful other than to establish a presumption that the defendant was under the influence, and they can't explain how that test could be relied upon in any manner to calculate back what BAC was at the time of the driving. Counsel, can you clarify your argument for me? Are you arguing that it's inadmissible because of a foundation reason? The state cannot lay a proper foundation for a reliable test? Are you arguing it's inadmissible under 403 because it may be probative, but the prejudicial effect substantially outweighs the total value? Thank you for that question. I'm arguing that it is inadmissible under 403, and a substantial reason for that is that it cannot be shown to be reliable to determine BAC at the time of the driving. Do you agree that the evidence is probative, though? Oh, yes. Yes, I do. I believe, and I argued in the trial court, that the probative value of it was diminished by virtue of the fact that the defendant had no intention of defending the case by claiming she had not been drinking, and that was something that was considered by the trial court at the hearing. If the probative value of that test result, if it can't tell us BAC at the time of driving, it certainly can establish that she was consuming alcohol. And we argued and the trial court accepted that if, so long as we were not going to defend on the basis that she had not consumed alcohol, that probative value was less than it would have been. Certainly, if we would defend the case on the basis of I had not consumed alcohol, then the probative value of that test would increase. But in a case where the test cannot tell us anything about blood alcohol content at the time of the driving, the probative value is less and the potential for unfair prejudice is substantial. And the second district case of People v. Floyd that has been cited by both parties to the court, that case quoted a Nevada Supreme Court case, the Armstrong case, where in the Nevada, and they agreed specifically in Floyd with the Nevada Supreme Court, who concluded that allowing a jury to determine guilt on the basis of a test taken hours later that cannot be proven to be reliable is exactly the sort of unfair prejudice that the law seeks to avoid. So for that reason, the test certainly should not be allowed into evidence. Do you agree that it's probative? It has minimal probative value that is substantially outweighed by the prejudicial effect that it would cause. And who just determines whether it's outweighed or not? That is a determination that historically has been given to the trial court. And the trial court judge has an obligation, and it's called his gatekeeper role. His role as gatekeeper is to ensure that a jury who's going to make the decision gets only sufficiently reliable evidence to make such a decision. And that gatekeeper role is entitled to deference by reviewing courts because the trial court is in a superior position to. See, that's my difficulty. When they use the word gatekeeper from federal cases, dealing with expert testimony, in the traditional gatekeeper role, as the cases have indicated, is you keep out the evidence. The gatekeeper keeps out the evidence. Certainly. You agree that in this case, this was probative evidence. Yes. And that, however, Rule 403, which allows for the gatekeeper to keep out otherwise admissible evidence, allows the judge to keep it out if that evidence, if the probative value of that evidence is substantially outweighed by the risk of unfair prejudice. And the judge in the trial court has to have a hearing and make the threshold determination of whether a jury can receive that evidence. Is it sufficiently reliable for the jury to consider it? So is the issue in this case, as you are now presenting it, that there should have been a 403 hearing by the trial judge to say, this probative evidence that we have is outweighed by the prejudice? And what is the prejudice that the person had a certain alcohol level? Well, the prejudice is that there's going to be a presumption that is raised. But there was the 403 hearing occurred. The trial court determined that, in fact, this evidence was so prejudicial that the prejudice would outweigh the probative value. And then the appellate court, I respectfully suggest, when the case came to the second district appellate court, the appellate court decided a slightly different issue. The appellate court seems to have made a bright line determination suggesting that a test, a bright line that we were arguing that a four-hour-old test cannot be admissible. That's not what we're arguing at all, and it wasn't what the trial court decided. The trial court decided that the evidence would be admissible evidence as it did have some probative value. However, this otherwise admissible evidence needed to be suppressed because the prejudicial effect it would likely have outweighed the probative value that the evidence would have had for the state at trial. So the legal issue that the appellate court should have determined was that issue that you're just saying? Yes. They should have reviewed the trial court's ruling and determined whether any reasonable judge. The standard of review of the trial court's ruling should have been very deferential.  That being whether any reasonable judge could have ruled in the manner that the trial court judge ruled. And in this case, the appellate court did not take that approach. They did not. The majority opinion did not. The dissenting opinion was extremely critical of the majority opinion. And interestingly, when the issue should have been whether any reasonable judge could rule the way the trial court judge ruled, two members of the panel in the appellate court reversed the trial court and a dissenting opinion agreed with the trial court. It creates the interesting situation where, you know, there have been four judges who have reviewed and ruled on this issue. Two of them, one being the trial court judge and one being the dissenting judge in the appellate court, saw it the same way. That seems to me to negate the standard of whether any reasonable judge could rule the way that the trial court judge ruled because a reasonable judge in the appellate court would have ruled that way as well. He did so in his dissent. I'm still confused. There's something I'm confused about. I think some of the other questions come that way, too. What we're talking about, what should have been admitted or not admitted, was the blood test, right? Not the testimony, not any kind of expert testimony as to how the jury should interpret the blood test, but just the blood test itself. Right. The blood test itself was determined to have no value to determine BAC at the time of the driving. So you say it has no probative. Which is it, though? That's my question. It has any probative value or no probative value? I think that's what we're struggling with. It has minimal probative value because it does demonstrate that she had consumed alcohol in the time leading up to the test. So it has minimal probative value to determine the consumption of alcohol. It has no probative value to determine a BAC level at the time of the driving based on the scientific testimony of Dr. O'Donnell, who is an expert in this area, and determined that there is no way that any person could calculate from the time of the test, the test result that was taken, back to the time of the driving. Because as the court is well aware, in order for a valid retrograde extrapolation calculation to occur, the person has to be in the elimination phase of the alcohol consumption and elimination process in order to relate it back. They have to be post-peak absorption. And in this case, the video that the expert reviewed demonstrated that the alcohol absorption was still in process at the time of the driving. He saw, and I'm not asking this court to reverse the wise decision that was made in the Bull Valley versus Winterspec case. That case is a case that has stood for a long time, and they indicated in that case, they didn't just have a bright line rule that says, well, if you take a test, regardless of whether it's reliable, you can admit it. They discussed, in allowing for the admission of that test without any sort of expert testimony, they discussed that the BAC at the time earlier was at least the same and likely higher because the person was showing diminishing signs of intoxication as time went on. And that's in the opinion. It was something that they relied upon as being important. In this case, you have the absolute reverse, the absolute opposite of what was present in Winterspec. You have the person appearing to demonstrate new and more significant symptoms of intoxication as time went on, which results in the expert concluding that they were still absorbing the alcohol. They were not post-peak absorption. And, therefore, the very reliable scientific calculation that could be made can't be made in this particular case. And part of this is because of the four-hour period? The four-hour period is significant in the sense that it is long removed, but I did not ask the expert whether or not two hours would have been different. I suspect that it would have because of the fact that for there to be a reliable calculation, you must be post-absorption at the time of the driving. Thank you, Counsel. Thank you. Mr. Kriegel? Thank you. Good morning, Your Honors, Counsel. My name, I'm Assistant Attorney General Jason Kriegel on behalf of the people. May it please the court, this court should affirm the appellate court's judgment and remand for a trial at which a fact finder will consider all of the evidence the defendant drove under the influence of alcohol, including her post-arrest blood alcohol content, or BAC. Now, Rules of Evidence 402 and 403 establish a presumption that probative evidence should go before the fact finder who can then decide contested issues of fact based on all the evidence. And although, as Counsel argued, the trial court has some discretion to limit the evidence that reaches the fact finder, that discretion is tightly circumscribed. Trial court may exclude relevant evidence only if the probative value of that evidence is substantially outweighed by risks of unfair prejudice, likelihood of misleading the jury, or other similar considerations. And here, the trial court's evidentiary ruling was an abuse of discretion because defendant's post-arrest BAC is highly probative evidence, and it's neither unfairly prejudicial nor likely to mislead the fact finder. I want to respond to several of the points made by Counsel this morning. First, Counsel repeatedly refers to the BAC evidence as unreliable. But as the policy with Justice Wilder-White showed, the issue is not really about reliability here. Dr. O'Donnell didn't say that the evidence was unreliable. And at page 57 of defendant's appendix, the court concedes that there's no dispute that the BAC test is reliable to show exactly what it purports to show, which is that defendant's BAC was over the legal limit at the time that she was tested at 2 a.m. Now, Illinois courts, as defendant concedes this morning, in cases like Winter Park, have repeatedly held that fact finders can reasonably infer from this type of BAC evidence that a driver was over the legal limit at an earlier point in time prior to the test while they were driving. And the reason that is, is because as defendant's own expert explained, the science is pretty straightforward here. Alcohol is absorbed into the blood rapidly, and then the BAC will decline at a steady rate over time. And so this BAC evidence here has much more than a minimal probative value. It's highly probative not only of the fact that defendant was drinking, but that she drank to the point of intoxication and that her BAC was over the legal limit. Now, defendant describes Dr. O'Donnell's testimony as unrebutted, but that is not true. As cross-examination revealed, Dr. O'Donnell's opinion, again, is not that the BAC evidence was unreliable, but that he couldn't perform a retrograde extrapolation because defendant had not yet become intoxicated at the time of the traffic stop. But Dr. O'Donnell's opinion is based on a couple of facts that are essentially outside the record here. One is defendant's out-of-court statement to Dr. O'Donnell that she essentially consumed two alcoholic beverages immediately before getting behind the wheel, which Dr. O'Donnell appeared to credit. And counsel has attempted to downplay that fact this morning, but that certainly was part of Dr. O'Donnell's explanation for his opinion. And the second fact is that Dr. O'Donnell observed the video of the traffic stop. And in his opinion, defendant appeared more intoxicated as the traffic stop proceeded. But of course, Dr. O'Donnell dismissed a number of other facts that showed evidence that the defendant was intoxicated. The fact that she was driving erratically, that her child was unsecured in the backseat, that she had difficulty answering questions and retrieving her driver's license, and that she failed the roadside sobriety test. So as Chief Justice Burke pointed out, this is the type of evidence that jurors consider all the time. And this is a factual dispute about when defendant became intoxicated that is appropriately reserved for the fact finder. And it was an abuse of discretion to the trial court to allow Dr. O'Donnell to take that determination away from the fact finder. In the defendant's brief, she argues that she'll be unable to rebut evidence that her BAC was over the legal limit because Dr. O'Donnell cannot perform a retrograde extrapolation. But that is not correct. Defendant will be free to introduce Dr. O'Donnell's testimony at trial and to argue that the people have not met their burden of proof beyond a reasonable doubt, and that the jurors should doubt that defendant was intoxicated at the time of the traffic stop. That is all perfectly appropriate argument and evidence to place before the fact finder. In addition, defendant's rule will lead to absurd results. As she appears to concede on pages 15 and 16 of her reply brief, defendant's rule would allow a motorist who refuses a breathalyzer and thus forces the police to obtain a warrant for a blood draw to always be able to exclude the resulting BAC evidence as unreliable, simply because it shows the BAC at a later time. But as the U.S. report recognized in the Mitchell case, BAC limits have been a critical tool for law enforcement to address the serious public safety issue of drunk driving. And this court should continue to allow jurors, fact finders, to do what they've long done, which is to consider this type of evidence along with whatever evidence the defendant may present and determine whether the defendant was intoxicated at the time of driving. In this case, it was four hours. What would be a cutoff? Six hours? Well, Your Honor, sure. It's hard to give a cutoff. I think that in this case, it's clear that the four hours doesn't render the BAC evidence unreliable, specifically because defendant was found to still be over the limit four hours later. Now, if you have a... This was okay because it showed intoxication, correct? That's right, Your Honor. The people's argument in this case is not that a BAC test is always admissible in all circumstances. Again, the court does have some discretion. The discretion is very limited. But when you have highly probative evidence like this, that defendant was still intoxicated four hours later. And again, there's no suggestion that she could have consumed additional alcohol in those four hours. She was in custody during that time. So the science is that the alcohol level will decrease at a steady rate. So as long as there was some time between drinking and the traffic stop for the alcohol to be absorbed, it's perfectly reasonable inference that... The counsel wasn't the expert testimony in this case that the defendant's content was increasing. It was just the opposite of the normal situation, if I can use that phrase. And therefore, that was the expert's testimony. Well, that's true, Your Honor. That was Dr. O'Donnell's opinion. But again, he rejected other evidence that suggested that defendant was intoxicated at the time of the traffic stop. And again, none of this evidence was presented in the trial court. It was all, you know, it was the basis of his opinion. And so I suppose that the people could have come forward with evidence at this hearing about, you know, when defendant was seen drinking, you know, and shown the video of the traffic stop to the trial judge. But that would simply be requiring the people to put on their entire case in cheek at this pretrial hearing. Again, the issue that will be central to the trial is whether defendant was intoxicated at the time of the traffic stop. And Dr. O'Donnell's opinion is essentially, no, she wasn't intoxicated because I observed this video. And in my opinion, she was not yet intoxicated until about 30 minutes after the traffic stop. That's something that, you know, he can opine about at trial. But the fact finder should not be required to accept his interpretation of that video and his interpretation of the other evidence that the people will present about intoxication. Counsel, can you address the dissent's comment that a proper application of the standard of review should result in affirmance of the trial court? Sure, Your Honor. Respectfully, I disagree. You know, again, it's true that the standard here is a piece of discretion. But as I discussed, the discretion is quite limited. And the trial judge had to find, for the evidence to be excluded, that the probative value was substantially outweighed by some of these other considerations of prejudice or likelihood of misleading. And as I've explained, there is no danger of prejudice or likelihood of misleading. The jury will understand that this evidence, the BAC evidence, shows exactly what it purports to show, which is that defendant's BAC level was over the limit at the time it was tested. And then the parties will put on other evidence about whether or not she was intoxicated at the time of the traffic stop, including potentially Dr. O'Donnell's testimony. And the fact finder will be able to weigh that evidence. And it was an abuse of discretion to take that decision away from the jurors. And it was also an abuse of discretion because the trial judge's decision rested on a legal error. The judge relied on the Floyd decision, which is simply not analogous to this case, because in Floyd, the people were attempting to introduce not BAC evidence, but a retrograde extrapolation, showing that a defendant whose BAC was below the legal limit just an hour and a half after a traffic stop, the people were attempting to introduce an extrapolation that would have shown her BAC above the limit just an hour and a half earlier. So that decision is not analogous to the facts in this case, both because the people are not attempting to introduce any retrograde extrapolation and are not required to do so, and because the evidence in this case is that the defendant's BAC was, of course, well over the legal limit even four hours after the traffic stop. And I'd be happy to answer any other questions. Your opponent wants to exclude the evidence, I think, under 403. That's right, Your Honor. What would be an appropriate statement with regard to that? Using the language of 403, I think its prejudicial value outweighs its probative value in this kind of circumstance. Right. So the trial judge would have to find that the probative value is substantially outweighed by the risk of prejudice or misleading the jury. Again, I think I explained why it doesn't... That's what your opponent argues in this case. That's right, Your Honor. That's my understanding of the argument. And again, you know, there are certainly one could imagine cases where a judge would have discretion to exclude BAC evidence. For example, it was shown that the BAC testing had been conducted improperly, such that the result of the BAC test was actually unreliable to show the BAC at the time of the test. Then you certainly could imagine a judge properly exercising discretion to exclude totally unreliable evidence. Here, this situation is different. Although the defendant says, again, that this evidence is unreliable, what Dr. O'Donnell actually testified is that he believes that a retrograde extrapolation is not possible because in Dr. O'Donnell's opinion, the defendant was not yet intoxicated at the time of the traffic stop based on her statements to Dr. O'Donnell and based on Dr. O'Donnell's review of the traffic stop video. How much deference should be given to the trial judge in these kinds of circumstances? So the trial judge, of course, has discretion to exclude evidence only after conducting the balancing test that rule 403 requires. So this court, certainly where the trial court makes a legal error or fails to properly conduct the balancing test, there's no discretion in those circumstances to exclude evidence. And again, the rule sets up a presumption that evidence will be admissible. And as the Winterpott Court and other courts have recognized, this sort of DAC testing is very reliable and will be highly probative in most cases if the evidence shows that the defendant's DAC is over the legal limit. We're not arguing for a bright-line rule as the defendant intends, but again, that's almost always going to be just as a matter of course admissible evidence in DUI cases because it is such persuasive, probative evidence. I mean, because that rule is talking about evidence that is admissible and you still throw it out because of prejudicial impact, correct? That's right, Your Honor. Our argument is that it is both highly probative and not prejudicial and not likely to mislead any fact finder. And so it must be admitted under rules 402 and 403. I mean, evidence like this is always prejudicial. Right. So any evidence that the state presents is always going to be prejudicial in some sense, in that the people are attempting to obtain a conviction. Well, but the question is, is it unfairly prejudicial? Does it encourage the jury to reach a verdict based on an improper basis such as, you know, hatred or, you know, like prior convictions or gang membership or something that is not the issue in the case. But here, the BAC evidence just goes to whether the defendant was intoxicated, which is the issue there. Thank you, Mr. Krugel. Your time is up. Thank you, Your Honor. Yes, of course. Thank you. Mr. Taylor. Thank you. I appreciate that counsel was able to get a little further along than I was and address the issue of the presumption that's created by the test result. And he he argued that that the presumption that we determine, we argue, is becomes not rebuttable. He argues that that presumption is perfectly acceptable when it's based on evidence that still nobody has explained a basis where any human being can use that evidence to calculate intoxication at the time of the driving. Excuse me. He Dr. Dr. O'Donnell indicated that it had no utility for that purpose and challenged the state to present an expert that disagreed. No expert was presented that disagreed. And the trial judge didn't have before him when he did the proper hearing that counsel acknowledges he was supposed to do. I'm glad he's not arguing that the B.A.C. tests are not covered under Rule 403. Rule 403 says the trial judge will do the balancing test and the judge did that here. So he didn't commit an abuse of discretion by doing the balancing test. They simply disagree with his balancing test result. And the trial court's balancing test result was to say that that this thing that can't tell us anything about intoxication at the time of the driving cannot be used as evidence to enable the state to create a presumption that they're going to rely on at trial that the person was intoxicated at the time of the driving. And and we say this court opinion seems to be focused on the other cases where the fact that it's very different where the state was introducing the blood test results that indicated a level that's below the statutory limit. Certainly. And then the argument was made, well that's standing in a zone that doesn't tell us anything about whether this person was under the influence at the time that they were driving. And the cases talk about perhaps some expert testimony would be able to fill in the gap to be able to say we could tell that two hours ago that this person must have had a blood alcohol level over the statutory limit. But of course that's not what this case is about. And that's I think the focus of the appellate court opinion is here instead of saying state's evidence that there's a motion excluded about is that the person at the time of the testing is below the limit. Here the testing is that the person is above the limit. That seems to be the core of the appellate court opinion. This is a very, very different kind of situation. As I said before, there's nothing here about the admissibility or not of any expert testimony about what that means to have a blood alcohol BAC so many hours later. There's no testimony one way or another about that. Simply the State was seeking to introduce the test itself, test result itself. Could you address the appellate court's concern that this case is so very different factually from all the other cases where in fact it was a BAC that's below the statutory limit? Certainly. I think that the appellate court did just as you indicated. They really kind of made a bright line determination based on the amount of time that was involved. And the science of retrograde extrapolation is good science. Dr. O'Donnell testified it's good science. If hypothetically, if it was applicable in this case to give you an accurate result, the defendant might bring somebody in to rebut the presumption that's created from that test result by doing retrograde extrapolation to show that it was lower. But we can't do that because the prerequisite to a reliable retrograde extrapolation is that at the time of the driving, the person has to be post-absorption. They need to have passed peak absorption and be in the elimination phase because that's what makes retrograde extrapolation work. So I'm trying to break this down a little bit in the language of the appellate court opinion. So if someone is brought to the police station and a blood test has to be obtained and a blood drawn and an analysis made, it's going to take some time. Certainly. And would you agree at some point the results of that test should be admissible? Oh, I agree that every time it's reliable, it should be admissible. I think the trial court agreed with that as well. And I'm not arguing for the court to create a bright line rule about four hours or three hours or two hours. In that instance, and I'm sympathetic to the argument that it takes time to do these things. In the vast majority of circumstances, it's going to be the same as it was in the Bull Valley versus Winter Park case, where the officer's observations and the video that they obtain is going to show that as time passes, the person displays less symptoms of intoxication and, therefore, that they can prove what is, I believe, most generally the case. Most people, when they are driving and they're stopped by the police. Your time and my time is running out. So what you're saying is in most cases, even though the testing is done some time after the person is no longer driving the car, that piece of evidence, that result of the BAC from half an hour, an hour, two hours later, is admissible to be factored in with the observations of the police officer. That's how most cases work, right? Certainly. So why doesn't it work here? It doesn't work here because the evidence is such that the expert opined that the person was not in the post-absorption phase at the time of the driving. You can't do the calculation. In the other situation we were just talking about, nobody's doing any calculation. An hour later, they take a blood test, they get a search warrant, they take a blood test, it comes back, and you agree. It's admissible. Certainly. And then the trial fact just, you know, uses that as analysis in looking at all the other evidence. Why not the same analysis in this case? The blood alcohol level came back over the statutory limit and there was other evidence that could be introduced that the trial fact could weigh as to whether or not at the time of driving this person was under the influence. Why not? Because they're going to create a presumption based on that. And in the case you're describing, if I have doubts about whether that is a legitimate presumption, I can have an expert do a calculation and tell me, yes, in fact, this test here was valid and it allows us to reach conclusions that the court requires to have a presumption. This is totally antithetical to the defendant's presumption of innocence to allow for there to be a presumption that I then can't rebut because the science won't let me to admit that. Isn't that true if it's an hour later? If it's an hour later, the test comes back and says this person is over the limit. If it's an hour later and the person is at the time of the driving, if they are in the elimination phase, then I don't have an argument to make. But when you take a test result that is later and we need to determine whether it is informative of alcohol content at the time of the driving, the only way to do that is through the science of retrograde extrapolation, which is available to the defendant as much as it is to the State, maybe not as easily because we don't have the resources. Ginsburg. So you agree that despite the doctor, the expert's testimony, that there is a valid scientific analysis that could be used in other cases? In other cases, but not in this one, which is why not this case? Because if you if this is something the defense uses to its advantage in other cases, why isn't it appropriate in this case? Because this is the rare case where the evidence shows that the person was not in the elimination phase at the time of the driving. All of the prior cases where the court has ruled on that, there has been some discussion about the person being in the elimination phase at the time of the driving by virtue of the fact that they go back to, well, the person displayed diminishing signs of intoxication. In this case, it's a unicorn of a case where the person had not reached full absorption at the time of the driving and, therefore, you can't give the State a presumption that we're unable to rebut because the science won't let us do a calculation, Judge. Thank you, Counsel. Thank you. Thank you. Case number 427824, People of the State of Illinois v. Laura Epstein, will be taken under advisement as Agenda Number 7. Thank you, Mr. Kriegel, for joining us on Zoom, and thank you, Mr. Taylor, for your